UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMANTHA BAROWSKY,            ) | |
|                                                            ) | |
|     Plaintiff,                          ) | |
|                                                            ) | |
| v.                                                         ) | Case No. 15-cv-30019-KAR |
|                                                            ) | |
| CAROLYN W. COLVIN,                        ) | |
| Acting Commissioner of Social              ) | |
| Security Administration,                         ) | |
|                                                            ) | |
|     Defendant.                      ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER
(Dkt. Nos. 13 & 19)

ROBERTSON, U.S.M.J.

    I.     Introduction

This is an action for judicial review of a final decision by the acting Commissioner of the Social Security Administration ("Commissioner") regarding the plaintiff's entitlement to Social Security Disability Insurance ("SSDI") pursuant to 42 U.S.C. § 405(g). Plaintiff Samantha Barowsky ("Plaintiff") asserts that the Commissioner's decision denying her such benefits – memorialized in an April 8, 2013 decision by an administrative law judge ("ALJ") – is in error because the ALJ: (1) erroneously required objective medical evidence substantiating disability caused by fibromyalgia and failed to give controlling weight to the opinion of a physician who treated Plaintiff's fibromyalgia; and (2) failed to give controlling weight, or to explain what weight, if any, he gave, to an opinion of one of Plaintiff's mental health care providers. Plaintiff has moved for judgment on the pleadings (Dkt. No. 13). The Commissioner has moved for an

1

order affirming the decision of the Commissioner on the grounds that the ALJ's decision is supported by substantial evidence (Dkt. No. 19).

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will allow the Commissioner's motion to affirm and deny Plaintiff's motion for judgment on the pleadings.

II.   Procedural Background

Plaintiff applied for SSDI on August 8, 2010, alleging an onset of disability on or around June 1, 2009 (Administrative Record ("A.R.") at 85, 111). The application was denied initially and on reconsideration (*id*.). Following a January 26, 2012 hearing (*id*. at 78-103),[1] the ALJ issued a decision on February 23, 2012, finding that Plaintiff was not disabled and denying Plaintiff's claim (*id*. at 111-125). Plaintiff did not appeal this decision (Dkt. No. 14 at 2). The Social Security Administration ("SSA"), however, subsequently determined that an erroneous "date last insured" had been used. The case was remanded to the ALJ for purposes of evaluating Plaintiff's claim for the period from November 1, 2010 through March 31, 2011, and a second hearing was scheduled on April 3, 2012 (A.R. at 71-77). On April 3, 2012, Plaintiff asked that the hearing be continued to give her an opportunity to obtain counsel (*id.* at 75). Following a third hearing on March 18, 2013, at which Plaintiff was represented by an attorney, a second ALJ issued an April 8, 2013 decision, finding that Plaintiff was not disabled during the period from November 1, 2010 through March 31, 2011 and denying her claim (*id*. at 12-28). The Appeals Council denied review (*id*. at 1-6). Thus, the second ALJ's decision became the final decision of the Commissioner. This appeal followed.

III.   Discussion

---

[1] Plaintiff, who has an associate's degree in creative writing and a bachelor's degree in criminal justice, waived her right to counsel and represented herself at this initial hearing (A.R. at 80-81).

A.  Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing.  *See* 42 U.S.C. § 405(g). Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).  The court reviews questions of law *de novo*, but must defer to the ALJ's findings of fact if they are supported by substantial evidence.  *Id*. (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)).  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)).  In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence.  *Id*.  So long as the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion."  *Id*. at 770.  That said, the Commissioner may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *Nguyen*, 172 F.3d at 35.

The decision of an ALJ "is binding on all parties to the hearing unless – . . . [the claimant] or another party request[s] a review of the decision by the Appeals Council within the stated time period [within 60 days of the date the claimant receives the denial decision.]"  20 C.F.R. § 404.955(a); *see also Dudley v. Apfel*, 2 Fed. Appx. 61 (1st Cir. 2001) (unpublished) (ALJ's determination is final and binding if claimant does not seek review by Appeals Council); *Bazinet v. Barnhart*, 434 F. Supp. 2d 67, 72 (D. Mass. 2006) (same).  Plaintiff has not contended

that there is a basis for reopening her prior application (Dkt. No. 14).  Accordingly, she is not entitled to contest the February 13, 2012 denial decision or to seek benefits based on a claim that she was disabled prior to November 2010.  *See* 20 C.F.R. § 404.955(a).

      B.  <u>Standard for Entitlement to Social Security Disability Insurance</u>

In order to qualify for SSDI, a claimant must demonstrate that she was disabled within the meaning of the Social Security Act prior to the expiration of her insured status for disability insurance benefits.  *See* 42 U.S.C. § 423(a)(1); *see also, e.g., Mariano v. Colvin*, C.A. No. 15-018ML, 2015 WL 9699657, *7 (D.R.I. Dec. 9, 2015) ("The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits.").  In this action, therefore, Plaintiff must demonstrate that she was under a disability during the period from November 1, 2010 through March 31, 2011.  A claimant is disabled for purposes of SSDI if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work."  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated under the statute.  *See* 20 C.F.R. § 404.1520.  The hearing officer must determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from performing previous relevant work; and (5) whether the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id.*; *see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. *See* 20 C.F.R. § 404.1520.

Before proceeding to steps four and five, the Commissioner must make an assessment of the claimant's "residual functional capacity" ("RFC"), which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.* "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "Work-related mental activities generally … include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* at *6.

The claimant has the burden of proof through step four of the analysis. At step five, the Commissioner has the burden of showing the existence of other jobs in the national economy that the claimant can perform notwithstanding physical or mental limitations or restrictions. *Goodermote,* 690 F.2d at 7.

C.  The ALJ's Decision

To determine whether Plaintiff was disabled during the relevant period, the ALJ conducted the five-part analysis required by the regulations.  At the first step, the ALJ found that Plaintiff did not engage in any substantial gainful activity during the period from November 1, 2010 through March 31, 2011, the date on which she was last insured (A.R. at 17).  At steps two and three, the ALJ found that Plaintiff had certain severe impairments – migraine headaches, fibromyalgia, major depressive disorder, and social phobia – but concluded that these impairments, considered separately or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 18-19).  The ALJ evaluated Plaintiff's severe mental impairments of major depressive disorder and social phobia under the applicable Paragraph B criteria,[2] finding that these conditions did not meet or medically equal in severity any listed impairments because, the ALJ found, Plaintiff had only mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace.  He further found that Plaintiff had not experienced any episodes of decompensation that had been of extended duration (*id.* at 18).  *See, e.g., Bourinot v. Colvin*, 95 F. Supp. 3d 161, 173 (D. Mass. 2015).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] except that Plaintiff

---

[2] Paragraph B criteria are met when the claimant's mental impairment results in at least two of the following:  (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1.  "Marked" difficulty means difficulty that is "more than moderate but less than extreme." *Id.*

[3] The SSA defines light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or

was limited to occasional climbing of ramps, stairs, ladders, ropes or scaffolds, balancing, stooping, kneeling, crouching, or crawling, and bilateral overhead reaching. In addition, he found that Plaintiff would need to avoid concentrated exposure to cold, heat, vibrations, and hazards. In terms of limitations based on mental impairments, the ALJ found that Plaintiff would not have limitations with memory and could adapt to changes in the workplace. He found that she would only be able to maintain concentration, persistence and pace sufficient to perform lower-level semi-skilled tasks, and that she would be limited to no more than occasional contact with members of the public (A.R. at 19). At step four, the ALJ found that Plaintiff had no relevant past work. Finally, at step five, relying on testimony from a vocational expert, the ALJ found that, taking into account Plaintiff's age, education, and her RFC, she could perform jobs that existed in significant numbers in the national economy, and, therefore, was not disabled (*id.* at 21-22).

  D.  Plaintiff's Objections

Plaintiff alleges that the ALJ erred by: (1) improperly insisting on objective evidence to support a diagnosis of fibromyalgia and rejecting what she characterizes as an opinion from her treating physician that she was disabled by that condition (Dkt. No. 14 at 11-13); and (2) failing to rely on, or even consider, an opinion of one of Plaintiff's treating mental health care providers who represented that Plaintiff's physical and mental impairments were of a disabling severity (*id.* at 14-20). The court will address these contentions in turn.

  1. The ALJ's finding that Plaintiff's fibromyalgia was not disabling was supported by substantial evidence in the record

---

leg controls. To be considered capable of performing light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

"Fibromyalgia is defined as '[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause.'" *Johnson v. Astrue*, 597 F.3d 409, 410 (1st Cir. 2009) (per curiam) (quoting *Stedman's Medical Dictionary*, at 671 (27th ed. 2000)). Although there are certain diagnostic criteria, the musculoskeletal and neurological examinations in fibromyalgia patients are normal, and there are no laboratory abnormalities. *See id.* (citing *Harrison's Principles of Internal Medicine*, at 2056 (16th ed. 2005); *Stedman's Medical Dictionary*, at 671). The SSA acknowledges that fibromyalgia may be a disabling condition. *See* SSR 12-2P, 2012 WL 3104 869, at *2 (July 25, 2012).[4] SSR 12-2P provides that, before the SSA will "find that a person with a[] [medically determined impairment] of [fibromyalgia] is disabled, [the SSA] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.,* at *2.

The ALJ who initially denied Plaintiff's claim found that Plaintiff had severe impairments, including fibromyalgia (A.R. at 113). She concluded, however, that "the objective evidence [of record] [fell] short of demonstrating the existence of pain and limitations of such severity as to preclude [Plaintiff] from performing any work on a regular and continuous basis" (*id.* at 117). The second ALJ agreed that Plaintiff had severe impairments, including fibromyalgia (*id.* at 18). He concluded, after hearing and review of the record evidence, that "there [was] nothing in the claimant's testimony and the medical record that would warrant changing the findings of the prior [ALJ]" (*id.* at 21). Plaintiff relies on *Johnson* to argue that the ALJ who denied the instant claim erred in adopting the requirement imposed by his predecessor

---

[4] "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." SSR 12-2P, 2012 WL 3104869, at *1 (July 25, 2012).

that plaintiff provide objective evidence substantiating her subjective claims of disabling pain and fatigue caused by fibromyalgia (Dkt. No. 14 at 11, 13).

The ALJ did not run afoul of *Johnson*. It appears that Plaintiff's treating care providers diagnosed Plaintiff with fibromyalgia, a diagnosis that the ALJ accepted (A.R. at 19). It is true that "once the ALJ accepted the diagnosis of fibromyalgia, [he] also 'had no choice but to conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.'" *Johnson*, 597 F.3d at 412 (quoting *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (alterations in original)). Nonetheless, it does not follow from a diagnosis of fibromyalgia that a claimant is necessarily disabled. *See Hebert v. Colvin*, No. 13-cv-102-SM, 2014 WL 3867776, at *7-8 (D.N.H. Aug. 6, 2014) (citing *Cusson v. Liberty Life Assur. Co.*, 592 F.3d 215, 227 (1st Cir. 2010); *Downs v. Comm'r, Soc. Sec. Admin.*, No. 2:13-CV-02-DBH, 2014 WL 220697 (D. Me. Jan. 21, 2014) (*Johnson* does not stand for proposition that ALJ who finds claimant has fibromyalgia must accept claimant's allegations about functional limitations at face value)). What is missing from the administrative record in this case is any assessment by a treating care provider that supports Plaintiff's claims of disabling functional limitations attributable to fibromyalgia.

According to Plaintiff, she was diagnosed with fibromyalgia by her treating care provider, Kenneth Aquilino, M.D., on June 22, 2009 (A.R. at 421-422; Dkt. No. 14 at 11). On November 18, 2009, Dr. Aquilino reported that Plaintiff was followed for "mild headaches" and had a "past history" of fibromyalgia. Her general health was reported to be "good," with language and memory intact (A.R. at 354). In or around early August 2009, Plaintiff saw Armand Aliotta, M.D., on referral from Dr. Aquilino. Dr. Aliotta reported that Plaintiff was in

9

"no acute discomfort." She was observed to be alert and oriented with intact language and memory (*id.* at 355-56). When Plaintiff returned to Dr. Aquilino on February 17, 2010, he observed that her chief problem was headaches, described as "a minor form of migraine headaches." Dr. Aquilino observed that her general health was good, that she was alert and oriented, and that language and memory were intact (*id.* at 354). Plaintiff returned to Dr. Aliotta on September 23, 2010. He reported that he was following her on a regular basis for migraine headaches. He observed that the headaches were responding to medication and were much less frequent and severe. He noted that Plaintiff continued to "struggle with fibromyalgic symptoms" of "achiness diffusely throughout her body." His overall impression was migraine headaches which were under excellent control, and fibromyalgia symptoms, "which [were] somewhat disabling" (*id*. at 431). In early January 2011, Dr. Aquilino noted that Plaintiff was in for a follow-up visit for migraine headaches, anxiety, celiac disease and a B12 deficiency. Although the treatment notes mention fatigue, they contain no reference to fibromyalgia. Dr. Aquilino noted that he had reinforced the importance of diet, exercise, weight loss, and a gluten free diet (*id.* at 544-45). On or around May 24, 2011, Dr. Aquilino noted that Plaintiff reported "some fatigue" (*id*. at 537). On July 27, 2011, Plaintiff had another regularly scheduled visit with Dr. Aliotta. He noted that she had done "very well" with her headaches, and "also apparently . . . suffer[ed] from fibromyalgia" for which she had recently been prescribed Gabapentin (*id.* at 529).

So far as can be ascertained from the record, neither Dr. Aquilino nor Dr. Aliotta ever opined that Plaintiff had functional limitations attributable to fibromyalgia, nor did either express an opinion that Plaintiff was disabled from working by fibromyalgia or, for that matter, by any other medical condition. *See Mariano*, 2015 WL 9699657, at *8-9 (affirming denial of disability

benefits in fibromyalgia case where treating physician offered no opinion of functional limitations or inability to work).

With no RFC assessment by either of the physicians responsible for treating Plaintiff's fibromyalgia, the ALJ was left with Plaintiff's subjective claims of pain and functional limitations, which were inconsistent with: (1) the relatively benign contents of medical records from Drs. Aquilino and Aliotta; (2) the RFC assessments by two non-examining medical consultants; and (3) at least to some extent, Plaintiff's report of her daily activities (A.R. at 282-89). A September 2010 RFC by non-examining medical consultant S. Ram Upadhyay noted "questionable fibromyalgia" and limited Plaintiff to light exertion with a few additional postural, manipulative, and environmental limitations (*id.* at 432-39). A subsequent RFC assessment, completed by medical consultant Erik Purins, M.D. on January 19, 2011, noted that Plaintiff's primary medically determined impairment was pain and fatigue from fibromyalgia. Dr. Purins also concluded, notwithstanding the fibromyalgia diagnosis, that Plaintiff was capable of light exertion. He assessed postural and environmental limitations beyond those identified in the first physical RFC (*id*. at 502-09). As to activities of daily living, among other things, in August 2010, Plaintiff reported no significant problems with personal care; that, with help, she took care of the family's dogs; that she could prepare simple meals and assist with house work; that she left the house once or twice a week, drove, went out alone, and shopped for food and clothes; that she could take care of her finances, read, watch television, and use the internet, and that she could walk up to a quarter of a mile before needing to rest for five minutes (*id*. at 282-89).

The ALJ accepted that Plaintiff had a medically determinable impairment (fibromyalgia) that could reasonably be expected to produce Plaintiff's pain and other symptoms. He found, however, that Plaintiff's statements concerning the extent of her suffering and her functional

11

limitations were not consistent with other evidence in the record (Dkt. No. 10-2 at 20). Plaintiff's "argument seems rooted in the mistaken belief that the symptoms and signs of fibromyalgia are *per se* disabling." *Mariano*, 2015 WL 9699657, at *9. The ALJ was entitled, indeed required, to consider all of the evidence of record when weighing the credibility of Plaintiff's subjective claims of pain. *See Couture v. Colvin*, Civil No. 14-cv-00069-JL, 2015 WL 3905273, at * 4. It is the ALJ's responsibility, and not this court's, to resolve conflicts in the evidence and draw reasonable inferences from the record. *See Bourinot*, 95 F. Supp. 3d at 182 (affirming denial of benefits where record supported ALJ's finding that fibromyalgia was not disabling). "[W]hile claimant plainly suffers from fibromyalgia, the ALJ concluded, based on substantial evidence in the record, that it did not render her disabled. And, he supportably found that claimant's assertions to the contrary were not entirely credible." *Hebert*, 2014 WL 3867776, at 8. There was no error.

   2. <u>The ALJ was not required to accord controlling weight to the opinion
      of one of Plaintiff's mental health care providers</u>

The second point of error advanced by Plaintiff is that the ALJ erred in failing to adequately consider the opinion of Mary A. Lutkus, LICSW, one of Plaintiff's mental health care providers, in his assessment of her RFC. Plaintiff characterizes Ms. Lutkus's opinion as a "treating source opinion," and argues that the ALJ was required to give her opinion controlling weight. In particular, Plaintiff points to a January 16, 2012 letter from Ms. Lutkus, addressed to "To Whom it May Concern," in which she opined that Plaintiff should qualify for disability based on her "physical and mental health conditions" (A.R. at 511).

Any argument by Plaintiff that Ms. Lukus's opinion was entitled to controlling weight is erroneous. Only licensed physicians, licensed or certified psychologists, and other "acceptable medical sources," including licensed optometrists, licensed podiatrists, and qualified speech-

language pathologists, qualify as "treating sources," whose opinions generally are entitled to more weight and, under certain circumstances, can be afforded controlling weight. 20 C.F.R. §§ 404.1502, 404.1513. Ms. Lutkus is none of these, and, as such, she does not qualify as a "treating source." Not only was her opinion not entitled to greater weight, but also, the ALJ was precluded from giving it controlling weight as Plaintiff urges. *See Pelletier v. Astrue*, No. 09-10098-GAO, 2012 WL 892892, at *4 n. 2 (D. Mass. March 15, 2012) (noting that a licensed clinical social worker is not an "acceptable medical source" whose opinion may be given controlling weight). *See also* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. § 404.1502 …, whose medical opinions may be entitled to controlling weight.").

Instead, Ms. Lutkus falls into the category of an "other source" within the meaning of the regulations. *See* 20 C.F.R. § 404.1513. As such, the ALJ was permitted to use the "other source" evidence from Ms. Lutkus to assess the functional limitations imposed by Plaintiff's severe mental impairments. *See id.* The ALJ could have assigned more weight to Ms. Lutkus's opinion, as courts permit an opinion from an "other source" to be given equal or greater weight than an "acceptable medical source," depending on the facts of the case. *See Taylor v. Astrue*, 899 F. Supp. 2d 83, 88 (D. Mass. 2012) (citing SSR 06-03p, 2006 WL 2329939, at *5). However, the ALJ also had the discretion to conclude that the "other source" evidence was not entitled to significant weight. *See id*; SSR 06-03p.

"Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources[.]'" SSR 06-03P, 2006 WL 2329939, at *6. And, "the adjudicator generally should explain the weight given to opinions from these 'other sources[.]'"

13

*id.* It would have been preferable had the ALJ directly addressed Ms. Lutkus's opinion that Plaintiff's mental and physical impairments were disabling (Dkt. No. 10-7 at 162).[5] Nonetheless, the ALJ was only *required* to ensure that his "discussion of the evidence in the determination or decision allow[ed] a claimant or subsequent reviewer to follow the adjudicator's reasons when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6. The opinion of Ms. Lutkus, a licensed social worker and treating care provider who opined that Plaintiff was disabled by mental health impairments, could potentially have an effect on the outcome of this case. The ALJ's reasoning, however, is apparent from his decision: he found the observations in the notes of treating psychiatrist Ali Moshiri, M.D., and the opinions of the non-examining mental health consultants more persuasive on the subject of the limitations caused by Plaintiff's mental health impairments than he did those of Ms. Lutkus.

The relevant evidence provides substantial support for the ALJ's conclusion. Plaintiff initiated mental health care treatment through Servicenet on August 3, 2010 after her father died (A.R. at 401). At intake, Ms. Lutkus, a licensed social worker, diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Moderate, and Social Phobia (*id.* at 403). On October 12, 2010, also through Servicenet, Plaintiff was evaluated for medication by psychiatrist Ali Moshiri, M.D., who diagnosed major depressive disorder NOS and social anxiety disorder. Dr. Moshiri noted that Plaintiff was alert, oriented, well kempt, and able to give appropriate information. Her affect was appropriate and subdued, and there was no evidence of psychosis or delusions (*id.* at 488). On November 3, 2010, Dr. Moshiri noted that Plaintiff felt a "slight improvement" from a

---

[5] The ALJ who initially considered Plaintiff's application for benefits assigned "little weight" to Ms. Lutkus's opinion because Ms. Lutkus was not an acceptable medical source under the regulations and because, in the ALJ's view, Ms. Lutkus's opinion was inconsistent with the record as a whole and appeared to be based on Plaintiff's subjective complaints (A.R. at 121).

switch in medications, and noted that she appeared "stable and in good spirits" (*id.* at 490). At around this time, Ms. Lutkus observed that Plaintiff had experienced a slight improvement on a new medication, and had been leaving the house on a fairly regular basis (*id.* at 495). On November 9, 2010, Plaintiff returned for a brief appointment with Dr. Moshiri, who noted that Plaintiff appeared stable and in good spirits, with no acute signs (*id*. at 553). On January 11, 2011, Dr. Moshiri noted that Plaintiff had been stable and was "doing very well with continued benefits on Zoloft." She appeared stable, in good spirits, and Dr. Moshiri saw no signs of acute change (*id*. at 560). On April 12, 2011, just after expiration of Plaintiff's insured status, Dr. Moshiri reported that Plaintiff was "doing okay for the most part" although she had on-going stressors related to the sale of the family's home and her mother's breast cancer. Nonetheless, Dr. Moshiri reported, Plaintiff was sleeping adequately and appeared stable and in good spirits with no signs of depression or overt anxiety (*id.* at 567).

An October 2010 review by a non-treating mental health consultant concluded that Plaintiff had a mental impairment that qualified as severe, albeit one that might improve with treatment. In assessing Plaintiff's RFC, the mental health consultant concluded that Plaintiff appeared able to persist at simple, lower-level semi-skilled tasks with reduced public contact (*id.* at 458). A follow-up case analysis completed on January 11, 2011 by Joseph A. Whitehorn, Ph.D., a non-examining psychologist, concluded that the records showed that Plaintiff's mental status as of October 2010 was "virtually [within in normal limits]" (*id.* at 501).

The ALJ's assessment of Plaintiff's RFC adopted the functional limitations set out in the October 3, 2010 mental health review, which was the only mental residual functional capacity assessment in the record (A.R. 19-20, 456-458). "[T]he ALJ was entitled to rely on the opinions of the nonexamining [psychologists] to the extent they were consistent with the record."

*Thayer v. Colvin*, Civil Action No. 13-30131-KPN, 2014 WL 5581272, at*4 (D. Mass. 2014). The ALJ reasonably could find, as he did, that, while Plaintiff was limited by her mental health impairments, those impairments did not disable her from working at lower level semi-skilled tasks with no more than occasional contact with the public (A.R. at 19). *See Arruda v. Barnhart*, 314 F. Supp. 2d 52, 75 (D. Mass. 2004). The conflicts between Ms. Lutkus's opinions on the one hand and the observations of Dr. Moshiri and the opinions of the non-examining mental health consultants on the other, were for the ALJ to resolve. *See id.*

Plaintiff's claim was initially denied in February 2012 in a thorough opinion from which she did not take an appeal (A.R. at 111-133). The responsibility of the second ALJ was to decide whether the administrative record established the existence, or the onset, of a disability, within the meaning of the Social Security Act, at any time from November 1, 2010 to March 31, 2011. Accordingly, the ALJ's review of the evidence was generally focused on medical records during or close in time to the six-month period in question. Although the record arguably could justify a different result, there is substantial evidence supporting the ALJ's decision. Therefore, it must be affirmed. *See Bourinot*, 95 F. Supp. 3d at 182 (citing *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) (ALJ's decision must be affirmed if supported by substantial evidence, "even if the record arguably could justify a different conclusion")).

IV. Conclusion

For the reasons stated, Defendant's Motion to Affirm the Commissioner's Decision (Dkt. No. 19) is granted, and Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) is denied.

IT IS SO ORDERED.                           /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
Dated: February 17, 2016                    United States Magistrate Judge